IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

WALLACE DWAYNE PETERSON, JR.                      PLAINTIFF

VERSUS                                    CIVIL ACTION NO. 1:20-cv-216-HSO-JCG

PEARL RIVER COUNTY, MISSISSIPPI;
DAVID ALLISON, Individually; and
JOHN AND JANE DOES 1-10, Individually                  DEFENDANTS

---

**MEMORANDUM BRIEF IN OPPOSITION TO DAVID ALLISON'S MOTION FOR JUDGMENT ON THE PLEADINGS BASED ON QUALIFIED IMMUNITY [D.E. 7]**

---

The Plaintiff, WALLACE DWAYNE PETERSON, JR., submits this Memorandum Brief in Opposition to *David Allison's Motion for Judgment on the Pleadings Based on Qualified Immunity* [D.E. 7], and says:

### FACTS AND PROCEDURAL HISTORY

Mr. Peterson suffered damages and personal injuries when he was assaulted by members of the Pearl River County Sheriff's Department, same amounting to an excessive use of force, said assault having occurred on the morning of August 23, 2019 at Mr. Peterson's residence located at 424 Connie Hariel Road in Perkinston, Mississippi. More specifically, on the morning of August 23, 2019 around 7:30 a.m., agents and/or employees of the Pearl River County Sheriff's Department, including Defendant David Allison ("Allison"), while performing within the scope of their duties as agents and/or employees of the Pearl River County Sheriff's Department, drove to Mr. Peterson's home. Upon their arrival, Mr. Peterson was asleep on the couch inside his living room only

several feet from the front door. Allison and the other Defendant Officers kicked in the front door of Mr. Peterson's residence without a warrant, without knocking or announcing their presence, and absent any legal or justifiable cause. After breaking into the residence, one or more of the officers recklessly, maliciously, and without reason assaulted Mr. Peterson by striking him in the face with his/her shotgun or similar firearm issued to him/her by the Pearl River County Sheriff's Department.

Immediately thereafter, Allison and other Defendant Officers recklessly, maliciously, and without reason slammed Mr. Peterson to the floor, handcuffed him, and forced him outside while others ransacked his residence. In addition to the multiple assaults, Mr. Peterson was traumatized by being forced to remain outside for approximately three (3) hours - wearing only his underwear - while Allison and the other Defendant Officers tore apart his residence. Eventually, Mr. Peterson was unlawfully arrested; however, his charges were subsequently dismissed. During the unlawful search immediately following Mr. Peterson's unlawful arrest, the Defendant Officers, including Allison, seized a substantial amount of United States currency located in Mr. Peterson's bedroom safe, money which has never been returned to Mr. Peterson.

As a result of the actions and omissions of Allison and the other Defendant Officers, this incident ended in Mr. Peterson suffering physical injuries to his face, head, mouth, and wrists, as well as mental and emotional suffering. After the senseless assault, Mr. Peterson was treated at Pearl River County Hospital in Poplarville, Mississippi, where he was diagnosed and treated for a concussion, head and wrist contusions, and

abrasions, said injuries being severe enough to cause permanent nerve damage to his face and mouth.

The operative pleading in this case is Plaintiff's Complaint asserting five (5) claims against Allison individually: (1) Fourth Amendment excessive force claim pursuant to the Civil Rights Act, 42 U.S.C. § 1983; (2) Fourth Amendment unreasonable search and seizure claim pursuant to the Civil Rights Act, 42 U.S.C. § 1983; (3) Fourth Amendment unreasonable seizure (false arrest/imprisonment) claim pursuant to the Civil Rights Act, 42 U.S.C. § 1983; (4) Fourth Amendment supervisory liability claim pursuant to the Civil Rights Act, 42 U.S.C. § 1983; and (5) Mississippi state law reckless disregard claim under the Mississippi Tort Claims Act ("MTCA"),[1] which is imputed to Defendant Pearl River County, Mississippi under the doctrine of *respondeat superior*. [D.E. 1]. Allison now suggests that Plaintiff's Complaint is insufficient to establish claims against Allison as a matter of law, and thus, entitling him to a judgment on the pleadings based upon qualified immunity. [D.E. 7, 8]. As illustrated throughout this Memorandum, Mr. Peterson begs to differ, as his Complaint easily meets the required pleading standards.

## ARGUMENT AND AUTHORITIES

### I.  F.R.C.P. 12(C) STANDARD

Any party may move for judgment on the pleadings after the pleadings are closed. *Hughes v. Tobacco Institute, Inc.* 278 F.3d 417, 420 (5th Cir. 2001). "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for

---

[1]  Miss. Code Ann. § 11-46-1 *et seq.*

3

relief." *Id*. (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n. 8 (5th Cir. 2000). Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if material facts are not in dispute and questions of law are all that remain. *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir. 1998). In ruling, courts are confined to the pleadings and must accept all allegations contained therein as true. *Hughes*, 278 F.3d at 420.

The standard for Rule 12(c) motions for judgment on the pleadings is identical to the standard for Rule 12(b)(6) motions to dismiss for failure to state a claim. *See Doe v. MySpace*, Inc., 528 F.3d 413, 418 (5th Cir. 2008). To survive a motion for a judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This involves a two-step inquiry. *Doe v. Robertson*, 751 F.3d 383, 388-90 (5th Cir. 2014). First, the court must identify the complaint's well-pleaded factual content. *Id*. at 388. In doing so, the court sets aside "any unsupported legal conclusions," the truth of which "we cannot assume." *Id*.; *see also Iqbal*, 556 U.S. at 678-79. Second, the court asks whether the remaining allegations "are sufficient to nudge the [plaintiff's] claim across the 'plausibility' threshold." *Robertson*, 751 F.3d at 390 (quoting *Iqbal*, 556 U.S. at 678). In other words, the court must consider whether it can reasonably infer from the complaint's well-pleaded factual content "more than the mere possibility of misconduct." *Ashcroft*, 556 U.S. at 679. This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

## II. COUNT I OF THE COMPLAINT SUFFICIENTLY STATES A CLAIM FOR EXCESSIVE FORCE AGAINST ALLISON.

"To state a claim for excessive force the plaintiff must allege 1) an injury, 2) resulting directly and only from the use of force that was excessive to the need, and 3) the excessiveness of which was clearly unreasonable." *Khan v. Lee*, 2010 WL 11509283 (E.D. La. 2010) (citing *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005) (internal citations omitted)). The Court need not engage in the rote task of stepping through each paragraph of the complaint in order to conclude that Plaintiff clearly states a claim for excessive force under federal law. *Id*. Rather, the crux of Allison's Rule 12(c) argument is that the complaint is deficient because it fails to allege the specific conduct that Allison committed in violation of Mr. Peterson's right to be free from excessive force so as to overcome his assertion of qualified immunity. However, the law does not require the specificity that Allison urges at the pleading stage. *Id*.

Personal civil liability for constitutional torts is based solely on individual conduct. *Michalik v. Hermann*, 422 F.3d 252, 260 (5th Cir. 2005) (quoting *Michalik v. Hermann*, No. 99-3496, 2003 WL 21805037 (Aug. 4, 2003)). Theories of imputation, guilt by association, or vicarious liability do not apply to hold one officer personally liable for the acts or omissions of another officer. *Id*. In other words, each officer is only liable for his own conduct. But it does not necessarily follow that defendant-officers are entitled to qualified immunity when they act in concert yet the plaintiff cannot produce evidence that each defendant individually took some action that led directly to the injury. For instance, the Fifth Circuit held that individual officers acting as a group were not entitled to qualified

5

immunity even though the evidence suggested that only two of the ten officers had applied force sufficient to cause the plaintiff's injuries. *Simpson v. Hines*, 903 F.2d 400, 403 (5th Cir. 1990). Because the defendants had "collectively" used physical force against the plaintiff, and because the officers had conferred amongst themselves as to how to handle the situation and functioned as a unit once inside the plaintiff's cell, they were not entitled to qualified immunity on summary judgment. *Id*.

In *Morris v. Pierce*, the magistrate judge issued a well-reasoned opinion explaining why Fifth Circuit precedent does not support the contention that a plaintiff's inability to identify which specific officers in a group actually tasered, punched, or used other means of force on him is fatal to his case. No. 07-80, 2008 WL 4287967 (W.D. La. Sept. 17, 2008). The judge noted that the Fifth Circuit had expressly recognized that other officers present when excessive force is used may also be liable when they fail to intervene. *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) ("[A]n officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983."). Thus, as the court noted in *Morris*, in light of *Hale*, the law in the Fifth Circuit appears to be consistent with the law of several other jurisdictions such that officers are not perforce entitled to qualified immunity simply because the plaintiff cannot identify the specific officers who actually employed the injurious force. *Morris*, 2008 WL 4287967, at *6-7 (citing and discussing cases from other jurisdictions).

Here, despite Allison's alleged confusion about the counts asserted against him, Mr. Peterson's Complaint clearly identifies Allison as one of the "Defendant Officers".

[D.E. 1 at ¶4]. As it pertains to the issue of excessive force, the Complaint alleges that Allison and the other defendant officers drove to Mr. Peterson's home; broke into his residence without a warrant, without knocking, without announcing their presence, without probable cause, and without allowing Mr. Peterson the opportunity to come to the front door; that Allison was present when one of the Doe Defendants struck Mr. Peterson in the face with his shotgun and failed to take reasonable measures to prevent that use of force; that Allison and other officers slammed Mr. Peterson to the floor, handcuffed him, and forced him outside in his underwear where he remained against his will for hours; and that as a result of these actions, Mr. Peterson suffered significant injuries including permanent nerve damage. [D.E. 1 at ¶¶12-13, 20].

Additionally, the Complaint alleges that Mr. Peterson never made any sudden movements or gestures that could be interpreted by Allison and the other Defendant Officers, or any objectively reasonable law enforcement officer, as being aggressive or threatening; that Mr. Peterson took no action, nor did he say anything, that would cause Allison or any objectively reasonable law enforcement officer to believe he posed a threat of serious physical harm, or any harm whatsoever, to Defendant Officers, the public, or anyone else; that Mr. Peterson complied with any and all orders, whether lawful or unlawful, from Allison and the other officers; that Mr. Peterson did not resist his unlawful arrest or the unlawful search of his residence; that Mr. Peterson did not act in a belligerent or aggressive manner and did not possess or attempt to possess a weapon at any time; and that Mr. Peterson was not engaged in criminal activity. [D.E. 1 at ¶¶18-19]. Accordingly, he has clearly met the threshold of alleging 1) an injury, 2) resulting directly

and only from the use of force that was excessive to the need, and 3) the excessiveness of which was clearly unreasonable." *Tarver*, 410 F.3d at 751.

The cases cited by Allison do not bring the reasoning in the foregoing cases into doubt. Unlike Allison, *Ashcroft* dealt with a claim against supervisory officials sued personally notwithstanding that they had no personal involvement whatsoever with the constitutional claims being asserted. The court found that the plaintiff had engaged in " 'formulaic recitations of the elements' of a constitutional [ ] claim," and given the lack of factual information to support a claim against the supervisors personally, the complaint teetered on the edge of vicarious liability. *Ashcroft*, 556 U.S. at 692. And in *Ashcroft*, certain aspects of the claim were not even plausible in light of well-known societal facts. *Id*. at 695.  However, in the instant case, it is undisputed that all of the officers were at the scene when excessive force was used against Mr. Peterson. As such, each of those officers either participated in applying physical force to Mr. Peterson or was present when the force was applied and failed to intervene. Under either scenario, the law in this circuit holds that any of the individual officers could be liable for a violation of § 1983 if excessive force was in fact used.[2] And *Hale v. Townley*, *supra*, belies the assertion that the only officers who face potential liability are the ones who actually struck Mr. Peterson with their shotgun, slammed him to the ground, or handcuffed and hobbled him.  Nevertheless,

---

[2]   A necessary predicate to a claim for failure to intervene under § 1983 is an unconstitutional use of excessive force. *Gilbert v. French*, 367 Fed. Appx. 76, 83 (5th Cir. 2010); *Golla v. Bossier City*, 687 F. Supp. 2d 645, 662 (W. D. La. 2009) (citing *Melear v. Spears*, 862 F.2d 1177, 1186 (5th Cir. 1989)). An officer must be present at a scene involving another officer's use of excessive force before he may be held liable for failure to intervene. *Gilbert*, 367 Fed. Appx. at 83 (citing *Hale*, 45 F.3d at 919).

Mr. Peterson's Complaint clearly alleges that Allison, as one of the Defendant Officers, participated in slamming him to the ground, handcuffing him, and dragging him outside.

It should also be noted that the Complaint was filed without an opportunity to conduct any discovery. Mr. Peterson knew generally what had taken place and knew that several officers had been on the scene, but not having been given the opportunity to conduct discovery and to depose the deputies, he is at a clear disadvantage in pleading his case as to each individual defendant. This is often the norm in § 1983 excessive force cases involving several officers and Mr. Peterson will certainly learn more about the role of the specific officers during discovery. *Mitchell v. Little*, No. 04-1068, 2006 WL 212214, at *8 (E.D. Mo. Jan. 27, 2006) (citing *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985)). Applying the standard that Allison urges here, no plaintiff could ever state a claim against police officers who act in a group particularly where the victim is deceased and cannot communicate his side of the story to his attorney. Under such circumstances, the police would be allowed to act with complete immunity from civil suit because most cases would be subject to immediate dismissal at the pleading stage. A standard that would encourage malevolent officers to simply "finish off" their victims is surely not what the law envisions.

### III. COUNTS II AND III OF THE COMPLAINT SUFFICIENTLY STATE A CLAIM FOR ILLEGAL SEARCH AND SEIZURE AGAINST ALLISON.

Under the first prong of the qualified-immunity analysis, we consider whether the officers' actions violated Mr. Peterson's Fourth Amendment rights. *See Trammell v. Fruge*, 868 F.3d 332, 339 (5th Cir. 2017) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). In his

9

Complaint, Mr. Peterson alleges that Allison and the other Defendant Officers broke into his home without a warrant, without probable cause, and absent exigent circumstances or any other exception to the warrant requirement. [D.E. 1 at ¶¶12, 29].

"Physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. U.S. Dist. Ct.*, 407 U.S. 297, 313 (1972). A warrantless search of a person's home is ***presumptively unreasonable***, unless an exception to the warrant requirement applies. *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015) (citing *Brigham City v. Stuart*, 547 U.S. 398, 404 (2006)). One exception is the existence of exigent circumstances justifying immediate action. *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1130-31 (5th Cir. 2014) (citing *Stuart*, 547 U.S. at 403)). Whether exigent circumstances exist to justify a warrantless search depends on whether, given the totality of the circumstances, the search was objectively reasonable. *See Stuart*, 547 U.S. at 404. Officers cannot manufacture exigency through their own action or inaction. *United States v. Jones*, 239 F.3d 716, 720 (5th Cir. 2001). In assessing whether the officers created the exigency, we focus on the "reasonableness of [their] investigative tactics leading up to the warrantless entry." *Id.* at 720.

Exigent circumstances exist where, inter alia, officers must enter a home to provide emergency assistance to preserve life or prevent serious injury. Officers may enter a home "without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Stuart*, 547 U.S. at 403 (finding exigent circumstances where officers looked through a window and witnessed a bloody fight inside the house). "Officers do not need ironclad proof of a likely serious, life-threatening injury to invoke

10

the emergency aid exception." *Michigan v. Fisher*, 558 U.S. 45, 48 (2009) (internal quotation marks omitted). The Supreme Court has found exigent circumstances where the responding officers "encountered a tumultuous situation in the house—and ... also found signs of a recent injury." *Id*. at 49; *see also Stuart*, 547 U.S. at 400–01.

However, in the instant cause, there is no dispute that exigent circumstances were not present. Accordingly, per well settled fifth circuit precedent, Mr. Peterson has facially pleaded sufficient facts to support a plausible claim that Allison violated his Fourth Amendment rights when he entered his residence without a warrant and absent proof or showing of exigent circumstances. In a case nearly identical to the instant cause, the court stated:

> In sum, as Vernon adequately alleged in his amended complaint, "[a]t the time of Defendants' warrantless entry, Defendants observed no crime being committed, and observed no fact or circumstance tending to give rise to an objectively reasonable concern for the safety of Plaintiff's children," apart from Linda's uncorroborated statement that her child was "lethargic and sick." We therefore conclude that ***Vernon has facially pleaded sufficient facts to support a plausible claim that the officers violated his Fourth Amendment rights*** when they ***entered his house without a warrant and absent proof or showing of exigent circumstances***. *See In re Great Lakes*, 624 F.3d at 210 (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937).

*Linicomn v. Hill*, 902 F.3d 529, 538 (5th Cir. 2018) (emphasis added). Accordingly, Allison's motion for judgment on the pleadings as to Counts II and III should be denied.

**IV.    COUNT FOUR OF THE COMPLAINT SUFFICIENTLY STATE A CLAIM FOR SUPERVISORY LIABILITY AGAINST ALLISON.**

Primarily citing only Paragraph 41 of the Complaint, Allison's motion argues that the allegations in Count Four are merely conclusory. However, the allegations in Count Four contain much more than those highlighted in Paragraph 41 and are listed as follows:

38. Mr. Peterson hereby adopts each and every paragraph preceding Count Four of this Complaint and makes the same a part of this Count.

39. Mr. Peterson submits Defendant Allison's own conduct deprived Mr. Peterson of his Fourth Amendment rights, as incorporated and applied to the states through the Fourteenth Amendment, to be free from unreasonable searches and seizures, including seizure through the use of excessive force.

40. At all material times, Defendant Allison was acting under color of state law as an agent or employee of Defendant County and was acting as the duly elected sheriff of Defendant County. Accordingly, at all material times, Defendant Allison was acting in the course and scope of his duties as sheriff of Defendant County.

41. At all material times, Defendant Allison implemented unconstitutional policies, failed to train, and failed to supervise the Doe Defendants. The implementation of these unconstitutional policies, failure to train and supervise the Doe Defendants by Defendant Allison, and his *personal participation in the unconstitutional acts and omissions* by the Defendant Officers directly and proximately caused the violation of Mr. Peterson's Fourth Amendment rights and the resulting injuries and damages sustained by Mr. Peterson.

42. Additionally, Defendant *Allison failed to take reasonable steps to prevent the Doe Defendants from using excessive force* against Mr. Peterson and from conducting an unreasonable search of Mr. Peterson's home and seizure of Mr. Peterson's person and effects.

43. Further, Defendant *Allison failed to take reasonable steps to intervene and protect Mr. Peterson from such excessive force and from the unreasonable search and seizure.*

44. Mr. Peterson would allege and show that Defendant Allison acted and/or failed to act as complained of herein, and that such acts and/or failures constitute deliberate indifference to the violations of Mr. Peterson's constitutional rights by the Defendant Officers.

45. Defendant Allison undertook these actions while acting under color of law, a violation which directly and proximately caused Mr. Peterson's injuries and damages.

12

[D.E. 1 at ¶¶38-45] (emphasis added).

A "plausibility" standard determines whether the plaintiff has pled sufficient facts to defeat a motion to dismiss. *Johnson v. Halstead*, 916 F.3d 410, 416 (5th Cir. 2019) (citing *Ashcroft*, 556 U.S. at 678). In *Halstead*, the fifth circuit found that supervisory liability remains a viable cause of action post-*Ashcroft* contrary to Allison's contrary contention in his motion. There, an African-American police sergeant plausibly alleged, as required to survive the police chief's motion for judgment on the pleadings, that the police chief was deliberately indifferent to the sergeant's constitutional rights, as required for the police chief's supervisory liability under § 1983 for an equal protection violation arising from an allegedly racially hostile work environment created by subordinates.[3] The sergeant in *Halstead* alleged that police chief knew about the alleged harassment and met with the sergeant soon after he filed a complaint with human resources (HR), that the report from independent investigators found that a high-ranking officer confirmed the sergeant's account of his interactions with the chief, that there was widespread knowledge of the sergeant's situation, that the chain of command knew about the hostile, intimidating, and bullying behavior, and that "top management" or "upper management" failed to take directed action as required by police department policy. *Id*.

Similarly, Mr. Peterson has alleged that Allison implemented unconstitutional policies, failed to train, and failed to supervise the other Defendant Officers [D.E. 1 at

---

[3] *Halstead*, 916 F.3d at 416-17 (A supervisor can be liable for the hostile work environment created by his subordinates "if that official, by action or inaction, demonstrates a deliberate indifference to a plaintiff's constitutional rights.") (quoting *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997)).

¶41]. Further, Allison's contention that the Complaint fails to demonstrate personal involvement is directly belied by the following paragraph whereby Mr. Peterson alleges that these unconstitutional policies, along with his ***personal participation*** in the unconstitutional acts and omissions by the Defendant Officers, directly and proximately caused the violations of Mr. Peterson's Fourth Amendment rights and the resulting injuries and damages sustained by Mr. Peterson. *Id*. More, Mr. Peterson alleged that Allison "failed to take reasonable steps to prevent the Doe Defendants from using excessive force" against Mr. Peterson and "from conducting an unreasonable search of Mr. Peterson's home and seizure of Mr. Peterson's person and effects." Id. at ¶42. Finally, Mr. Peterson has alleged that Allison "failed to take reasonable steps to intervene and protect Mr. Peterson from such excessive force and from the unreasonable search and seizure." *Id*. at ¶43.

Therefore, in the light most favorable to Mr. Peterson, the Complaint states a valid claim for supervisory liability against Allison. *Williamson*, 224 F.3d at 440. Accordingly, Allison's motion must be denied.

## CONCLUSION

For the foregoing reasons, Defendant David Allison's Motion for Judgment on the Pleadings Based upon Qualified Immunity should be denied, *in toto*.

RESPECTFULLY SUBMITTED, this the 5th day of October, 2020.

**WALLACE DWAYNE PETERSON, JR.**

By: /s/ G. MORGAN HOLDER, MSB# 104131

## CERTIFICATE OF SERVICE

I, G. Morgan Holder, of the law firm of Smith & Holder, PLLC, hereby certify that I have this date filed the foregoing with the Clerk of Court using the ECF system which served a copy on all participating counsel of record.

SO CERTIFIED, this the 5th day of October, 2020.

/s/ G. MORGAN HOLDER, MSB# 104131

CHRISTOPHER SMITH, MSB# 104366
G. MORGAN HOLDER, MSB# 104131
**SMITH & HOLDER, PLLC**
POST OFFICE BOX 1149
GULFPORT, MS 309502
228-206-7076 (Telephone)
228-284-1870 (Facsimile)
chris@smithholder.com
morgan@smithholder.com