**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**WALLACE DWAYNE PETERSON, JR.**                                   **PLAINTIFF**

**VERSUS**                          **CIVIL ACTION NO. 1:20-cv-216-HSO-RHWR**

**PEARL RIVER COUNTY, MISSISSIPPI;**
**DAVID ALLISON, Individually; and**
**JOHN AND JANE DOES 1-10, Individually**                **DEFENDANTS**

**DAVID ALLISON'S MOTION FOR SUMMARY JUDGMENT**

Comes now, David Allison ("Sheriff Allison"), by and through counsel, and submits his Motion for Summary Judgment, showing unto the Court as follows:

1.       On the morning of August 23, 2019, Pearl River County Sheriff's Department ("PRCSD") officers executed a duly-issued Search Warrant at 424 Connie Hariel Road, Perkinston, Pearl River County, Mississippi. *Warrant*, CM*/ECF Doc. No. 13-1*. Consequential to the warrant, the PRCSD officers arrested Plaintiff.

2.       As a result of his arrest, Plaintiff filed this suit, alleging claims against the County, Sheriff Allision, and "John and Jane Does 1-10, in their respective individual capacities . . . ." *Compl*., *CM/ECF Doc. No. 1*.

3.       Sheriff Allison filed his Motion for Judgment on the Pleadings based on Qualified Immunity ("MJP") [7, 8] on September 15, 2020. Thereafter, Plaintiff filed his Response in Opposition ("Response") [11], along with an accompanying Memorandum Brief [12] on October 8, 2020, to which Movants filed their Reply [13] on October 12, 2020.

4.       On February 22, 2021, the Court entered its Memorandum Opinion and Order ("Order") Granting in Part and Denying in Part Defendant David Allison's Motion

[7] for Judgment on the Pleadings Based on Qualified Immunity. *CM/ECF Doc. No. 14*. The Court dismissed the claims raised against Sheriff Allison except for "Plaintiff's claim under Count Four for bystander liability under 42 U.S.C. § 1983 . . . ." *Id*. The next day, the Court entered a TEXT ONLY ORDER lifting the previously-entered stay of the matter, allowing the parties to conduct qualified immunity discovery.

5.     During the discovery process, Defendants responded to Plaintiff's Interrogatories and Requests for Production on June 28th and 29th, 2021. Thereafter, parties took depositions on October 18, 22, and November 8[1].

6.     The discovery and depositions in this matter make it clear that Sheriff Allison is entitled to qualified immunity as to Plaintiff's sole remaining bystander liability claim against Sheriff Allison. This Court, therefore, must grant summary judgment in Sheriff Allison's favor.

7.     The only claim currently before the Court for adjudication is whether or not Sheriff Allison stood idly by while the unnamed and unspecified Doe Defendants in this matter allegedly used excessive force on Plaintiff.

8.     In the Fifth Circuit, "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (quoting *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)). To establish bystander liability under § 1983, Plaintiff must demonstrate Sheriff Allison (1) **knew** that a fellow officer

---

[1] Qualified immunity discovery closed on November 7, 2021, but the same was on a Sunday, which afforded parties the opportunity to take remaining depositions on Monday, November 8, 2021.

was violating Plaintiff's constitutional rights; (2) had a reasonable **opportunity to prevent** the harm; and (3) chose **not to act**.'" *Rew v. Vincent*, 489 F. Supp. 3d 563, 579 (S.D. Miss. 2020) (quoting *Whitley*, 726 F.3d at 646) (emphasis added).

9.      Obviously, to succeed on a claim for failure to intervene and prevent the use of excessive force against a plaintiff, "it is axiomatic that there must be an underlying excessive force violation of the plaintiff's Eighth Amendment rights." *Stewart v. Mathews*, No. 4:19-CV-00120-GHD-JMV, 2021 WL 3519725, at *6 (N.D. Miss. Aug. 10, 2021) (citing *Davis v. Cannon*, 91 Fed. Appx. 327, 329 (5th Cir. 2004)). Here, Plaintiff's bystander liability claim against Sheriff Allison fails.

10.      Plaintiff's Complaint fails to adequately plead an excessive force claim under federal pleading standards. Even if the Court finds Plaintiff's Complaint properly pleads an excessive force claim, deposition testimony shows that to the extent any officer used excessive force on Plaintiff, Sheriff Allison was not present for the same, which precludes any reasonable opportunity for the Sheriff to prevent the alleged harm.

11.      The Court must dismiss Plaintiff's bystander liability claim against Sheriff Allison as Plaintiff's underlying excessive force allegation is the quintessential, sinful form of improper "shotgun pleading" that runs afoul of Rule 8, and is disfavored by this Court and the greater Fifth Circuit.[2] *Thomas v. Univ. of Mississippi*, No. 3:18-CV-00062-

---

[2] Sheriff Allison did not raise this argument related to the unnamed or unspecified Doe Defendants in either his MJP [7] or Reply [13] as the Doe Defendants were just that, unnamed and unspecified. Furthermore, the Doe Defendants had not been served with process, so there were no additional officer defendants to raise those arguments. There still are not. Sheriff Allison primarily raises the issue now in the face of Plaintiff's clear and present need to establish an underlying excessive force claim in order to succeed on his bystander liability claim.

GHD-RP, 2018 WL 6613807, at *5 (N.D. Miss. Dec. 17, 2018) (citing, *inter alia*, *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015)). Federal pleading standards require complainants to plead factual content that allows the court to draw the reasonable inference that **the defendant** is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When such factual content is lacking—as it is here—dismissal is appropriate.

12.     "'To state a section 1983 claim, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was **committed by a person** acting under color of state law."'" *Whitley v. Hanna*, 726 F.3d at 638 (quoting *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008)). "**As a prerequisite**, a plaintiff 'must **identify** defendants who were either **personally involved** in the constitutional violation or whose acts are causally connected to the constitutional violation alleged.'" *Roberts v. City of Shreveport*, 397 F.3d 287, 291-92 (5th Cir. 2005) (quoting *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995)).

13.     As the Court knows, "'[t]o state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, **specifying the personal involvement of <u>each</u> defendant**.'" *Pinkston v. Hall*, No. 5:18-cv-103-MTP at *5 (S.D. Miss. 2020) (quoting *Jolly v. Klien*, 923 F. Supp. 931, 943 (S.D. Tex. 1996)). Plainly, "[p]ersonal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).

14.     As such, the Fifth Circuit "disregards bare assertions of collective responsibility, unsupported by concrete factual allegations." *Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 243 (5th Cir. 2021). "Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Although a complaint does not need detailed factual contentions, the 'allegations must be enough to raise a right to relief above the speculative level.'" *Id*. (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Turner v. Lieutenant Driver*, 848 F.3d 678, 685 (5th Cir. 2017).

15.     When plaintiffs fail to allege specific facts against specific defendants, and rather assert "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against," plaintiffs run afoul of Rule 8. *Thomas*, 2018 WL 6613807, at *5 (quoting *Weiland*, 792 F.3d at 1321–23). This type of "shotgun pleading" fails "to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323.

16.     "The most common type [of a shotgun pleading]—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts . . . ." *Thomas*, 2018 WL 6613807, at *5 (quoting *Weiland*, 792 F.3d at 1323). Here, Plaintiff's Complaint uses a variant of "Mr. Peterson hereby adopts each and every paragraph" seven (7) times. *Compl*. ¶¶ 21, 27, 33, 38, 46, 53, 60.

17.     The paragraph which Plaintiff adopts for his excessive force claim alleges the following:

> Upon breaking into Mr. Peterson's residence, one or more of the Doe Defendants recklessly and intentionally, without any legal or justifiable reason, violently assaulted Mr. Peterson by striking Mr. Peterson in the face with their shotguns or similar firearms issued to the Doe Defendants by the PRCSD. Immediately thereafter, one or more of the Defendant Officers recklessly, intentionally, and without reason slammed Mr. Peterson to the floor, handcuffed him, and forced him outside while other Defendant Officers ransacked Mr. Peterson's residence. In addition to the multiple assaults, Mr. Peterson was traumatized by being forced to remain outside for approximately three (3) hours - wearing only his underwear - while Defendant Officers tore apart his residence.

*Id*. ¶ 13. This is patently insufficient to state a § 1983 excessive force claim.

18.     "[T]he Fourth Amendment right to be free from excessive force during a seizure is clearly established." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). "To prove a claim of excessive force, plaintiffs must present evidence of '(1) an injury (2) which resulted **directly and only from** the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable.'" *Tilman v. Clarke Cty.*, 514 F. Supp. 3d 884, 891 (S.D. Miss. 2021) (quoting *Romero v. City of Grapevine, Tex.*, 888 F.3d 170, 176 (5th Cir. 2018)).

19.     Consequentially, in a § 1983 context, a plaintiff necessarily must specify the personal involvement of each defendant and show how that individual's actions amounted to injury-causing force. Plaintiff's Complaint fails to do so, especially with the fictitious Doe Defendants.

20.     "'As a general matter, fictitious-party pleading is not permitted in federal court.'" *Gibbons v. McBride*, 124 F. Supp. 3d 1342, 1358 (S.D. Ga. 2015) (quoting *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010)). "A limited exception to this rule exists when the plaintiff's description of the defendant is so specific as to be at the very worst,

surplusage, and thus discovery would uncover the unnamed defendant's identity. *Id.* (quoting *Richardson*, 598 F.3d at 738). Plaintiff's Complaint does not rise to the level of this limited exception.

21.     Granted, Plaintiff "can hardly be expected to give a blow-by-blow narration of an alleged beating," but he could have provided more factual details about the officers, especially since Plaintiff alleges that he witnessed the officers' actions for an alleged period of three (3) hours. *Tilman*, 514 F. Supp. 3d at 891; *see also Compl.* ¶ 13. Plaintiff's Complaint does not number the officers, otherwise describe them, or provide any context to what they allegedly did, which are all things that Plaintiff could have noted as he observed the officers following his arrest.

22.     For example, Plaintiff could have alleged: "Doe Officer One, a short officer with a stocky-build, struck Mr. Peterson repeatedly with his firearm." The Court's review of Plaintiff's Complaint clearly shows that Plaintiff did not so plead, the result of which is that Plaintiff has filed a Complaint that does not satisfy federal pleading standards with respect to the Doe Defendants and their alleged actions.

23.     Significantly, Plaintiff's own testimony refutes the claims alleged in his Complaint regarding multiple assailants. Plaintiff's deposition testimony reveals that only one officer, whom Plaintiff describes as a "big, bulky guy" allegedly struck Plaintiff in the face with a firearm. *Peterson Dep.* 16:10-21, 17:1. Plaintiff's deposition testimony goes on to describe factual particulars of the officer's alleged actions known to Plaintiff, all of which were missing from Plaintiff's Complaint with, and in, respect to this particular officer. *Schultea v. Wood*, 47 F.3d 1427, 1432 (5th Cir. 1995).

24.     While the Court's Order [14] states that it must regard Plaintiff's excessive force allegations against the Doe Officers as true, the Court need not do so here as Plaintiff's excessive force claim lacks factual specificity sufficient to meet federal pleading standards. The Court's Order [14] highlighted the fact that Plaintiff's excessive force claim against the Doe Officers fails to satisfy Rule 8 pleading standards in that Plaintiff's Complaint collectively lumps all the "Defendant Officers" together and fails to provide any "factual basis to distinguish their conduct." *Sahlein v. Red Oak Cap., Inc.*, No. 3:13-CV-00067-DMB-JM, 2014 WL 3046477, at *4 (N.D. Miss. July 3, 2014) (quoting *Atuahene v. City of Hartford*, 10 Fed. Appx. 33, 34 (2d Cir. 2001)). *Sahlein* clearly states that such a failure subjects a complaint to dismissal under Rule 12(b)(6). *Id.*

25.     The Court must dismiss the surviving bystander liability claim against Sheriff Allision because Plaintiff has failed to state an underlying excessive force claim upon which relief can be granted. Plaintiff, therefore, is not entitled to any relief on any excessive force claims, which means he cannot succeed, as a matter of law, on any bystander liability claims against Sheriff Allison.

26.     Regardless of the above, the Court must nevertheless dismiss Plaintiff's claim for bystander liability against Sheriff Allison, as Plaintiff's Complaint fails to plead an excessive force claim that can survive a motion to dismiss. With no underlying claim for excessive force, there can be no bystander liability for Sheriff Allison.

27.     "It is similarly axiomatic that to be held liable, a defendant must fail to take *reasonable* measures to prevent the use of excessive force, indicating that a defendant must know or should have known about the allegedly unconstitutional behavior and

have both the time and capability to intervene." *Stewart*, 2021 WL 3519725, at *6 (citing *Whitley*, 726 F.3d. at 646) (Court's emphasis). "An officer may be liable under § 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley*, 726 F.3d at 646 (brackets and quotation marks omitted).

28.     While Plaintiff's Complaint uses the magic words that "Defendant Allison failed to take reasonable steps to prevent the Doe Defendants from using excessive force against Mr. Peterson . . . ," this is a textbook conclusory allegation that is not enough to prevent a motion to dismiss. "Here is where the Plaintiff's case falls apart." *Stewart*, 2021 WL 3519725, at *7.

29.     Even were the Court to find a viable excessive force claim, Plaintiff's Complaint fails to allege that Sheriff Allison (1) knew any of the Doe Defendants were using excessive force on Plaintiff; (2) had a reasonable opportunity to prevent the harm; or (3) chose not to act in a manner to stop the alleged excessive force. Plaintiff's Complaint, therefore, lacks facts sufficient to survive dismissal. Accordingly, the Court must dismiss Plaintiff's bystander liability claims against Sheriff Allison.

30.     The Court must also dismiss Plaintiff's bystander liability claim against Sheriff Allison on the simple premise that Sheriff Allison was not present when any alleged excessive force may have taken place. In this regard, even if an excessive force violation occurred, Sheriff Allison cannot be liable for bystander liability regarding the

same as he had neither the time nor the capability to intervene." *Stewart*, 2021 WL 3519725, at *6.

31.     As for timing, the entire event did not take very long. When executing the search warrant at Plaintiff's home, Captain Shane Edgar—a law enforcement officer with sixteen (16) years of experience—entered the residence first, announced his presence, and then handcuffed Plaintiff after Plaintiff reached for a wine bottle which Captain Edgar assessed Plaintiff "was obviously holding that in an aggressive manner as if he was going to use it as a weapon . . . ." *Edgar Dep*. 20:1-20, 23:2-8, 52:8-23, a copy of which is attached hereto as **Exhibit 1**. The entire process took less than a minute. *Id*. 22:19 ("20 seconds or so"); *Williams Dep*. 34:8-9, a copy of which is attached hereto as **Exhibit 2** ("The whole trailer was probably cleared in under 20 seconds."); *Tate Dep*. 16:1 ("five to ten seconds" to make contact with Plaintiff), 23:16, a copy of which is attached hereto as **Exhibit 3** ("maybe 30 seconds" to clear the remainder of the trailer).

32.     Plaintiff's alleged excessive force would have taken place during the initial twenty (20) to thirty (30) second window of initial contact and handcuffing. *Peterson Dep*. 19:6-22, a copy of which is attached hereto as **Exhibit 4**. Notably, Sheriff Allison was not present during this time. In fact, Plaintiff testified that he did not first notice the Sheriff until Plaintiff was standing outside of his home. *Id*. 31:7-9. When asked if Sheriff Allison entered Plaintiff's home prior to when Plaintiff noticed him outside, Plaintiff responded: "I don't think. I don't know." *Id*. 31:18.

33.     Other testimony further shows that Sheriff Allison was not in Plaintiff's home during the time when Plaintiff allegedly suffered excessive force.

34.     Captain Shane Edgar, who entered Plaintiff's residence first, stated that he did not recall Sheriff Allison being present when he arm-barred and handcuffed Plaintiff, and that the first time he remembered seeing Sheriff Allison was outside the residence one PRCSD officers had Plaintiff in custody. *Edgar Dep*. 55:6-16.

35.     Chief Shane Tucker, who entered Plaintiff's residence either second or third, recalled that Sheriff Allison was not part of the entry stack[3] as the Sheriff never was as he lacked the training to be a part of the entry team. *Tucker Dep*. 31:16-17, 49:1-17, a copy of which is attached hereto as **Exhibit 5**.

36.     Sergeant Tyler Tate, who entered Plaintiff's residence either second or third, cannot recall whether or not he saw Sheriff Allison that day. *Tate Dep*. 14:11-12, 29:22-24, 38:1-6.

37.     Captain Daniel Quave, who entered Plaintiff's residence either fourth or fifth, believed that Sheriff Allison showed up after the search warrant was executed. *Quave Dep*. 9:23-25, 14:4-7, a copy of which is attached hereto as **Exhibit 6**. Notably, Captain Quave testified that Sheriff Allison was not in front of him in the stack, which further indicates that Sheriff Allison could not have been in Plaintiff's residence during the initial twenty (20) to thirty (30) second window of initial contact and handcuffing. *Id*. 24:4-14.

38.     Commander Rob Williams, who recalls that he was "maybe the fourth person through the door," also recalls that Sheriff Allison was definitely not in the trailer

---

[3] A "stack" is the generalized term used to describe the group of officers entering a residence in execution of a warrant.

with the entry team. *Williams Dep*. 9:7-9, 18:6-10. Commander Williams went on to testify that the Sheriff was not present after the initial entry/clearing of Plaintiff's residence. "Typically, on most of these calls we go to like this, the sheriff will not come in until we've back-cleared the house and everything's safe. Then he'll come in." *Id*. 36:9-18. Commander Williams testified that he first saw the Sheriff outside, twenty (20) to thirty (30) seconds after the whole thing was over. *Id*. 42:6-16.

39.     Sheriff Allison's own testimony states that when he entered Plaintiff's residence, which was about thirty (30) or forty (40) seconds after the other officers made entry, Plaintiff was on the ground, handcuffed with nobody on top of him, and bleeding. *Allison Dep*. 11:7-12:13, 17:16-18:1, a copy of which is attached hereto as **Exhibit 7**. Significantly, upon Sheriff Allison's entry, he did not see anyone beating or striking Plaintiff, and did not otherwise see what might have caused the blood on Plaintiff's face. *Id*. 18:2-18.

40.     The sum of the testimonies above show that even if an officer used excessive force on Plaintiff, Sheriff Allison was not present for the same and, therefore, (1) could not have known any of the PRCSD officers were using excessive force on Plaintiff; (2) did not have a reasonable opportunity to prevent the harm, which means (3) Sheriff Allison was not presented with a choice to stop the alleged excessive force. As a result, Plaintiff's bystander liability claim against Sheriff Allison fails, and this Court must dismiss the same.

41.     Law enforcement officials, like Sheriff Allison here, "acting within the scope of their official duties, are shielded from claims of civil liability, including § 1983 claims,

by qualified immunity." *Morris v. Dillard Dept. Stores, Inc.*, 277 F.3d 743, 753 (5th Cir. 2001). Qualified immunity protects public officials from the "burden of fighting lawsuits which arise from the good faith performance of their duties." *Ren v. Towe*, 130 F.3d 1154, 1159 (5th Cir. 1997).

42.    Officers maintain qualified immunity "unless it is shown that, at the time of the incident, [they] violated a **clearly established** constitutional right." *Mangieri v. Clifton*, 29 F.3d 1012 (5th Cir. 1994). Significantly, qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

43.    In assessing qualified immunity, courts apply a two-part analysis to see "whether Plaintiffs' allegations establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). If "no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194 (2001). "[I]f a violation could be made out, [however,] the next sequential step is to ask whether the right was clearly established." *Id.* at 201. The "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Id.* at 202.

44.    Qualified immunity issues in a case are "threshold" issues and must be dealt with as expeditiously as possible and prior to resolving non-immunity issues. *See Harlow v. Fitzgerald*, 102 S.Ct. 2727, 2728 (1982). To fulfill qualified immunity's protective purpose, the Fifth Circuit has long-required more than mere "notice pleadings" when a

claimant asserts a Section 1983 claim against an official in his individual capacity. *Elliott v. Perez,* 751 F.2d 1472 (5th Cir. 1985).

45.     More specifically, when an officer raises the qualified immunity defense, a complaint "must present more than bald allegations and conclusory statements." *Wicks v. Mississippi State Emp. Servs.*, 41 F.3d 991, 995 (5th Cir. 1995). In fact, a plaintiff must "allege with sufficient particularity **all facts** establishing a right to recovery, **including facts which negate the official's immunity defense**." *Id.*; *see also Nunez v. Simms*, 341 F.3d 385 (5th Cir. 2003) (holding that heightened pleading in qualified immunity cases requires plaintiffs rest complaint on more than conclusions alone); *Foster v. City of Lake Jackson*, 28 F.3d 425 (5th Cir. 1994) (burden of negating qualified immunity defense lies with plaintiffs).

46.     Plaintiffs "cannot be allowed to rest on general characterizations, but must speak to the factual particulars of the alleged actions." *Floyd v. City of Kenner*, 351 Fed. Appx. 890, 893 (5th Cir. 2009) (citing *Schultea*, 47 F.3d at 1433-34). Furthermore, federal pleading standards require "allegations of fact focusing specifically on the conduct of the individual who caused the Plaintiffs' injury." *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999).

47.     Most importantly, Plaintiff's allegations do not set forth the three elements necessary to establish a constitutional violation of either excessive force or bystander liability. As such, there is no need for the Court to inquire further regarding Sheriff Allison's qualified immunity. Sheriff Allison's immunity remains intact on the issue of bystander liability, and the Court must dismiss this claim as a result.

48.     Significantly, too, since Plaintiff's excessive force and bystander liability claims contain the exact type of "'naked assertion[s]' devoid of 'further factual enhancement'" that *Twombly* and *Iqbal* find insufficient to state a claim, there is no factual scenario for Sheriff Allison to consider whether or not the alleged rights in issue were clearly established in such a manner to find his alleged conduct unlawful in the situation confronted. *Iqbal*, 556 U.S. at 678; *Twombly*, 555 U.S. at 557.

49.     In this regard, words from the 11th Circuit speak further to Sheriff Allison's retention of his qualified immunity.

> For the law to be "clearly established," case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law. *See Lassiter*, 28 F.3d at 1149 (citing *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). We have said many times that "if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir.1997) (and cases cited therein). In the context of Fourth Amendment excessive force claims, we have noted that generally no bright line exists for identifying when force is excessive; we have therefore concluded that unless a controlling and materially similar case declares the official's conduct unconstitutional, a defendant is usually entitled to qualified immunity.

*Priester v. City of Riviera Beach, Fla*., 208 F.3d 919, 926 (11th Cir. 2000).

50.     Here, Plaintiff's Complaint has not provided Movant with sufficient factual particulars to determine if there is a controlling and materially similar case that Sheriff's Allison's alleged conduct was unconstitutional. Furthermore, the bald allegations and conclusory statements in Plaintiff's Complaint lacks factual detail to negate Sheriff Allison's qualified immunity.

51.     Sheriff Allison, therefore, is entitled to retain his qualified immunity, and

the Court must dismiss Plaintiff's Complaint, in its entirety, as a result.

WHEREFORE, PREMISES CONSIDERED, for purposes of this motion, the only issues that the Court needs to consider are whether or not Sheriff Allison (1) knew any of the Doe Defendants were using excessive force on Plaintiff; (2) had a reasonable opportunity to prevent the harm; or (3) chose not to act in a manner to stop the alleged excessive force.

The arguments above, as supported by deposition testimonies, show that Plaintiff's Complaint is insufficient to sustain a claim of bystander liability against Sheriff Allison, primarily because Sheriff Allison was not present when any alleged excessive force may have taken place. This warrants the Court's dismissal as Plaintiff cannot establish that Sheriff Allison (1) knew a fellow officer was violating Plaintiff's constitutional rights, (2) had a reasonable opportunity to prevent the harm, and (3) chose not to act.  Accordingly, Sheriff David Allison would respectfully request that this Court dismiss the above-mentioned federal law claims against him with prejudice.

**DATE:** **November 22, 2021.**

Respectfully submitted,

**DAVID ALLISON**

BY:   */s/ Lance W. Martin*
One of His Attorneys

WILLIAM R. ALLEN (MSB #100541)
LANCE W. MARTIN (MSB #105203)
Allen, Allen, Breeland & Allen, PLLC
214 Justice Street
P. O. Box 751
Brookhaven, MS 39602
Tel: 601-833-4361
Fax: 601-833-6647
wallen@aabalegal.com
lmartin@aabalegal.com

## **CERTIFICATE**

I, the undersigned, of Allen, Allen, Breeland & Allen, PLLC, hereby certify that on this day, I electronically filed the foregoing Motion for Summary Judgment with the Clerk of the Court using the ECF system, which shall give notice to:

> G. Morgan Holder, Esq.
> Christopher E. Smith, Esq.
> SMITH & HOLDER, PLLC
> Post Office Box 1149
> Gulfport, MS 39502-1149
> morgan@smithholder.com
> chris@smithholder.com
> *Counsel for Plaintiff*

This, the 22d day of November, 2021.

/s/ Lance W. Martin
OF COUNSEL