# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| WALLACE DWAYNE PETERSON, JR. | § § § | PLAINTIFF |
| v. | § § | Civil No. 1:20-cv-216-HSO-BWR |
| PEARL RIVER COUNTY, MISSISSIPPI; DAVID ALLISON; and JOHN AND JANE DOES 1-10 | § § § § | DEFENDANTS |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT DAVID ALLISON'S MOTION [35] FOR SUMMARY JUDGMENT

BEFORE THE COURT is Defendant David Allison's Motion [35] for Summary Judgment. Plaintiff Wallace Dwayne Peterson, Jr. has not responded and the time for doing so has long passed. After due consideration of the record, related pleadings, and relevant legal authority, the Court finds that Defendant David Allison's Motion [35] for Summary Judgment should be granted, and that Plaintiff Wallace Dwayne Peterson, Jr.'s claims against Defendant David Allison should be dismissed with prejudice.

### I. BACKGROUND

A.    Factual background

On August 23, 2019, officers with the Pearl River County Sheriff's Department ("PRCSD") executed a search warrant at Plaintiff Wallace Dwayne Peterson, Jr.'s ("Plaintiff" or "Peterson") residence. Ex. 1 [13-1]; Ex. 4 [35-4] at 14. Peterson testified that he was in his home laying on the couch when three or four PRCSD officers kicked his door in, shouted "sheriff's department," and told him to

stand up. Ex. 4 [35-4] at 13-14, 20. Peterson claims that a "[b]ig, bulky guy" then threw him to the ground "put his knee in my back and then hit" him in the face with "an assault rifle or shotgun." *Id.* at 17. Peterson was unable to further identify the officer who struck him, but he did explain that it was the same officer who told him to stand and put his hands up. *Id.* at 17, 21; *see also* Ex. 1 [35-1] at 15, 34-35 (Captain Shane Edgar testifying that he was the first officer to enter Peterson's residence and that he took Peterson to the ground). Peterson further testified that this was the only time he was struck. Ex. 4 [35-4] at 19.

Peterson was then handcuffed and taken outside of the residence. *Id.* at 14. Peterson claims that he was forced to stand in only his underwear for an hour while he was bleeding from the mouth before he was placed in a law enforcement vehicle. *Id.* at 14, 35. Sometime during the execution of the search warrant, law enforcement brought Peterson back into his residence to open a safe. *Id.* at 47-48. Peterson was transported to the jail after what he estimated was three hours in the law enforcement vehicle. *Id.* at 42.

With respect to Defendant David Allison ("Sheriff Allison"), the elected Sheriff of Pearl River County, Mississippi ("the County"), Peterson testified that the first time he saw Sheriff Allison was when he was taken outside of his residence and that he was unsure whether Sheriff Allison had previously been inside his residence. *Id.* at 31. Peterson avers that Sheriff Allison saw him bleeding the entire time he was outside and never offered any medical assistance. *Id.* at 35.

B.     <u>Procedural history</u>

On July 1, 2020, Peterson filed suit against the County, Sheriff Allison, and John and Jane Does 1-10, for claims arising from the August 23, 2019, incident. Compl. [1]. The Complaint advances six causes of action under 42 U.S.C. § 1983: (1) excessive force (Count One); (2) unreasonable search and seizure (Count Two); (3) unreasonable seizure or "false arrest/imprisonment" (Count Three); (4) supervisory and bystander liability as to Sheriff Allison only (Count Four); (5) a claim against the County pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) (Count Five); and (6) a claim against the County for reckless disregard pursuant to the Mississippi Tort Claims Act, Miss. Code Ann. § 11–46–1 et seq. (Count Six). *Id*. at 6-17. Counts One through Three are asserted against collective "Defendant Officers," whom Peterson defines as Sheriff Allison and other unidentified "officers, employees, agents, or servants" of the County. *Id*. at 2.[1]

Sheriff Allison initially filed a Motion [7] for Judgment on the Pleadings, asserting qualified immunity and seeking dismissal of Peterson's § 1983 claims against him. Mot. [7] at 1, 12. The Court entered an Order [14] granting in part and denying in part Sheriff Allison's Motion [7]. Order [14]. The Court dismissed Peterson's claims against Sheriff Allison in Counts One, Two, and Three, and his

---

[1] Counts Five and Six are not relevant to the present Motion as they are advanced against the County only. Count Five alleges that the County "established customs, policies, practices, decisions, and procedures amounting to deliberate indifference to . . . the deprivation of . . . Peterson's constitutional rights and the resulting injuries and damages to [him]." Compl. [1] at 12 (citing *Monell*, 436 U.S. at 658). Count Six alleges that the acts of "Defendant Officers" are imputed to the County through respondeat superior and constituted "reckless disregard of the health, safety, and well-being of" Peterson, entitling him to recovery under the Mississippi Tort Claims Act. *Id*. at 17.

3

supervisory liability claim in Count Four, but permitted his bystander liability claim in Count Four to proceed. *Id.* at 18.

C. Allison's Motion [35] for Summary Judgment

Sheriff Allison has filed the present Motion [35] for Summary Judgment seeking dismissal of the sole remaining claim against him, Peterson's bystander liability claim. Mot. [35]. Sheriff Allison argues that this claim should be dismissed because the Complaint [1] fails to adequately plead an underlying excessive force claim. Mem. [36] at 6-10. Alternatively, Sheriff Allison asserts that Peterson's bystander liability claim fails because he was not present when the alleged constitutional violation occurred, *id.* at 12-15, and his absence demonstrates that he lacked knowledge of any excessive force PRCSD officers may have used and did not have a reasonable opportunity to prevent any harm Peterson suffered, *id.* at 15.

Peterson has not responded to Sheriff Allison's Motion [35] and the time for doing so has long passed. L.U. Civ. R. 7(b)(4). Because Peterson has not responded, the Court considers the Motion [35] on its merits, without the benefit of a Response. *See, e.g., Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995).

## II. DISCUSSION

A. Summary judgment standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that

4

there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In order to rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted). Summary judgment is appropriate if the evidence is merely colorable or is not significantly probative. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). In deciding whether summary judgment is appropriate, the Court views the facts and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010).

B.  Bystander liability standard

The United States Court of Appeals for the Fifth Circuit has held that "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (quoting *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)). Bystander liability under § 1983 may attach where the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3)

5

chooses not to act." *Id.* (quotation omitted).[2]

However, bystander liability "will not attach where an officer is not present at the scene of the constitutional violation," *id.* (citation omitted), and an officer's "mere presence in the vicinity" of a constitutional violation is insufficient to establish liability, *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020). The Fifth Circuit does "consider whether an officer 'acquiesce[d] in' the alleged constitutional violation." *Whitley*, 726 F.3d at 647 (alteration in original) (quotation omitted).

C.    Analysis

Peterson's excessive force claims arise from "Defendant Officers" purportedly striking him in the face and slamming him to the ground on August 23, 2019. Compl. [1] at 6-7. Even assuming Peterson can sustain an excessive force claim against one of the other Defendants, the bystander liability claim against Sheriff Allison fails because the uncontroverted summary judgment evidence establishes that Sheriff Allison was not present when the alleged constitutional violation occurred.[3]

In support of his Motion [35], Sheriff Allison has submitted the deposition testimony of the PRCSD officers involved in the execution of the search warrant on Peterson's residence. *See* Exs. 1-7 [35]. Captain Shane Edgar testified that he was

---

[2] Bystander liability will only arise "where the plaintiff can allege and prove 'another officer's use of excessive force.'" *Kitchen v. Dallas Cnty.*, 759 F.3d 468, 481 (5th Cir. 2014) (quoting *Hale*, 45 F.3d at 919), *abrogated on other grounds*, *Kingsley v. Henrickson*, 135 S. Ct. 2466, 2472-73 (2015).
[3] The Court has previously dismissed Peterson's excessive force claim against Sheriff Allison. *See* Order [14] at 11.

6

the first person in the law enforcement "stack" to enter Peterson's residence and that he announced "sheriff's department" upon his entry. Ex. 1 [35-1] at 17, 20. Captain Edgar claims that he quickly took Peterson to the ground because he attempted to utilize a weapon. *Id.* at 23.[4] Once Peterson was on the ground, Captain Edgar handcuffed him and was responsible for escorting him outside, where Captain Edgar saw Sheriff Allison for the first time. *Id.* at 24, 55.

Officers Shane Tucker and Tyler Tate testified that they were either the second or third law enforcement officers to enter Peterson's residence. Ex. 5 [35-5] at 15; Ex. 3 [35-3] at 14. Officer Tucker testified that he observed Captain Edgar take Peterson to the ground within two or three seconds of their entry, and at that point he continued further into the house to search for any other individuals who might be present. Ex. 5 [35-5] at 16. Officer Tucker testified that it took, at most, ten seconds to "clear" Peterson's residence and that Sheriff Allison was not part of the group that initially entered the residence. *Id.* at 46, 48-49. Officer Tucker explained that the first time he saw Sheriff Allison was outside of the residence. *Id.* at 48.

Officer Tate testified that he entered the residence and saw Captain Edgar head toward Peterson, but did not see any of the interaction between the two because he turned to the left to search for other individuals in the house. Ex. 3 [35-3] at 19. Officer Tate finished "clearing" the house approximately thirty seconds

---

[4] Peterson disputes this fact but its resolution would not alter the result here because the Court assumes for purposes of this Motion [35] that Peterson can sustain an excessive force claim. *See Donahue v. Makar Installations, Inc.*, 33 F.4th 245, 249 (5th Cir. 2022) (recognizing that "[a] fact is material if it might affect the outcome of the suit") (quotation omitted).

7

after he had entered, *id.* at 35, and he did not recall seeing Sheriff Allison inside the residence at any point on August 23, 2019, *id.* at 38.

Major Robert Williams testified that he was the fourth person to enter the house. Ex. 2 [35-2] at 9. It took him fifteen seconds to park his car and get to the door and, when he entered, Captain Edgar "had already taken [Peterson] to the ground." *Id.* at 10, 15. Major Williams confirmed that Sheriff Allison was not in front of him when the law enforcement group entered the residence and that he had still not entered the residence when Major Williams returned from searching the right side of the residence. *Id.* at 36. Major Williams testified that the first time he saw Sheriff Allison was outside, roughly twenty to thirty seconds after law enforcement entered the house. *Id.* at 42.

Officer Daniel Quave testified that there were at least three officers who entered the house ahead of him and that he followed Major Williams inside. Ex. 6 [35-6] at 9. Officer Quave explained that he did not see Captain Edgar and Peterson's interaction because there were several "bigger, taller people in front of me." *Id.* at 10. He turned right upon entering the house and proceeded to search for fifteen to twenty seconds. *Id.* at 25-26. Officer Quave also confirmed that Sheriff Allison was not in front of him as he entered the residence. *Id.* at 24.

Sheriff Allison has also offered his own deposition testimony in support of his Motion [35]. He testified that he was in the last vehicle to arrive at Peterson's residence and that it took him approximately thirty or forty seconds to park and enter the house. Ex. 7 [35-7] at 17. He confirmed that he saw Captain Edgar enter

8

the residence, but by the time he reached the house the officers had already fully entered. *Id*. at 16-17. Sheriff Allison testified that when he finally entered the home, Peterson was already on the ground in handcuffs with no one on top of him. *Id*. at 11-12. Three or four minutes after Sheriff Allison entered the residence, Peterson was escorted outside. *Id*. at 18-19.

Peterson has not responded to the Motion [35] but the timeline of events he offered in his sworn deposition testimony does not contradict the one offered by the officers. Peterson testified that he was laying on his couch when three or four officers kicked in his door. Ex. 4 [35-4] at 14, 16. One officer announced that they were the "sheriff's department" and told Peterson to stand up and raise his hands. *Id*. at 17, 20-21. Peterson testified that he was then thrown to the ground and hit in the face with either an assault rifle or a shotgun by the same officer who ordered him to stand.[5] *Id*. at 17, 21. Peterson was then handcuffed and taken outside. *Id*. at 14, 19-20. He estimated that a "couple of minutes" elapsed from the officers' entry until he was moved outside. *Id*. at 16.

The foregoing evidence establishes that Sheriff Allison was not present when the alleged constitutional violation occurred. The uncontroverted summary judgement record reveals that: (1) at least five law enforcement officers entered Peterson's residence before Sheriff Allison entered; (2) Peterson was taken to the ground by Captain Edgar; (3) Peterson was only allegedly hit by one officer; and (4)

---

[5] Peterson was only able to identify his assailant as a "[b]ig, bulky guy" that "looked like he was on steroids." Ex. 4 [35-4] at 17. Peterson confirmed that the officer who hit him was not Sheriff Allison because he knew Sheriff Allison from previous interactions and testified that the first time he saw Sheriff Allison was after he was escorted outside. *Id*. at 29, 31.

9

the alleged strike took place before Peterson was handcuffed. Ex. 1 [35-1] at 22-24; Ex. 2 [35-2] at 9-10; Ex. 3 [35-3] at 19; Ex. 4 [35-4] at 16-17, 19-21; Ex. 5 [35-5] at 15; Ex. 6 [35-6] at 10. Sheriff Allison's uncontroverted testimony is that Peterson was already handcuffed and on the ground when he entered the house and thus, he could not have seen any officer strike Peterson in the face before he was handcuffed. Ex. 7 [35-7] at 11. Moreover, Sheriff Allison testified that he did not see any officer strike Peterson in the face after he entered the residence. *Id.* at 18. Peterson's testimony does not create a genuine dispute of material fact because he testified that the first time he saw Sheriff Allison was after he was escorted outside. Ex. 4 [35-4] at 31.

Because the competent summary judgment evidence demonstrates that Sheriff Allison was "not present at the scene of the constitutional violation," and thus had no opportunity to intervene to prevent the use of excessive force, the Court finds that he cannot be liable as a bystander under 42 U.S.C. § 1983. *Whitley*, 726 F.3d at 646; *see also McDonald v. McClelland*, 779 F. App'x 222, 227 (5th Cir. 2019) (holding that police chief could not be liable as a bystander when he was not present when an officer allegedly used excessive force while executing a warrant). Sheriff Allison's Motion [35] for Summary Judgment should be granted.

### III.  CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant David Allison's Motion [35] for Summary Judgment is **GRANTED**.

**IT IS, FURTHER ORDERED AND ADJUDGED** that, Plaintiff Wallace

Dwayne Peterson, Jr.'s bystander liability claim under 42 U.S.C. § 1983 against Defendant David Allison is **DISMISSED WITH PREJUDICE**, and Defendant David Allison is **DISMISSED** from this lawsuit. Plaintiff Wallace Dwayne Peterson, Jr.'s claims against Defendants Pearl River County, Mississippi, and John and Jane Does 1-10 will proceed.

**SO ORDERED AND ADJUDGED**, this the 2nd day of August, 2022.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE